(51 South. 841,)

No. 17,836.

SMITH v. AUSTRO–AMERICAN S. S. CO., Limited.

(March 14, 1910.)

*(Syllabus by the Court.)*

CARRIERS (§ 94*)—CARRIAGE OF GOODS—DELIVERY—ACTIONS—BURDEN OF PROOF.

Where the shipper produces the receipts of a carrier, issued by its authorized agent, showing the delivery of goods for safe carriage, and demands an accounting, the burden rests upon the carrier to prove either that the goods were never, in fact, delivered to it, and that the receipt was issued in fraud; or that the goods have been safely carried to their destination and there delivered to the consignee, subject to the exceptions lawfully included in its contract.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 378; Dec. Dig. § 94.*]

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by William Mason Smith against the Austro-American Steamship Company, Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

Farrar, Jonas, Kruttschnitt & Goldberg, for appellant. Merrick & Lewis, P. Gensler, Jr., and R. J. Schwarz, for appellee.

## Statement of the Case.

MONROE, J. Plaintiff sues for the value of 39 bales of cotton alleged to have been delivered to defendant for shipment and not accounted for, and defendant answers, in effect, that it never received the cotton. It appears from the evidence that plaintiff engaged for the shipment of 100 bales of cotton, per defendant's steamship Margherita (which was expected here about November 20, 1906) to Fiume. The steamship Federica, of the same line, was also expected here, however (and, in fact, arrived on December 3d, whilst the Margherita was still loading), and plaintiff was notified that his shipment would be transferred to that vessel.

About November 21st plaintiff, believing that he had delivered the 100 bales called for by his contract, sent a bill of lading to be signed; but he was informed that there were 39 bales short, and the bill was signed (per the Federica) for 100 bales, with the understanding that he would make good the shortage (without prejudice to his denial that it existed), when called on, which he did, by delivering 39 bales, on December 20th, which 39 bales left here on the Federica on December 25th. In the meanwhile, he had received another notice to the effect that the 61 bales, admitted to have been delivered, had been retransferred to the Margherita, which vessel left here on December 9th. As to the delivery of the cotton by plaintiff, it appears from the evidence, and admissions, that 35 bales were delivered from the Illinois Central Railroad on November 14th, and 15 bales from the North Eastern Road on November 15th and that on November 21st plaintiff ordered the remaining 50 bales (required to complete the 100 bales) to be delivered from the Illinois Central Road. Of the 50 bales, it is admitted that 11 bales were delivered; the dray receipt therefor bearing date November 22d. When, upon his demand for a bill of lading, plaintiff was notified that there were 39 bales short, he called upon Grant, his boss drayman, who informed him that the cotton had been delivered, but that the dray receipts were not to be found. Grant, however, insisted that the delivery had been made, and called upon Capt. Cosulich, agent in this port of the Austro-American Steamship Company, and his receiving clerk, to furnish him with receipts, which they declined to do. He testifies that the cotton was hauled in loads of 13 bales, each, by his dray-

men, Graham, Marshall, and Butler, and that he saw it delivered on the wharf. He says:

"There were 50 in the lot, but the 39 bales in dispute were shipped the next morning. There were 11 bales dumped (on the wharf) in the evening and 39 in the morning. * * * I was at the ship that morning when the 39 bales were delivered. * * * I seen the cotton dumped off the drays. * * * I am pretty near satisfied it went on the Margherita. She was the one right at the wharf."

As, in a measure, supporting the probability that the cotton may have gone on the Margherita, we find that Capt. Cosulich, in speaking of the loading and departure of that vessel says:

"She was short of cotton, and then we shipped the 61 * * * bales to complete that vessel, and sent her off."

On the other hand, neither he nor Richard (the clerk) remember that Grant, in asking for the receipts, made any statement to the effect that he had seen the cotton delivered. Graham and Marshall (two of the three draymen who are said to have hauled the cotton) testify that they and Butler hauled the cotton, and, after detailing the circumstances under which they obtained it, they say that they reached the wharf after the hour (5 o'clock p. m.) at which the clerk would receive it, and finding that to be the case, they unhitched their mules, covered the cotton and their drays with tarpaulins, and went home; that they were back there the next morning, early, and found the clerk and the stevedore; that the wharf was very much crowded, and there was some difficulty in finding a place for the cotton; but that, after a little while, the place was found, and the cotton unloaded; that the clerk said he would give the receipts to the last man, but, in the end, gave them no receipts. Comparing their testimony with that of plaintiff's witnesses, we find that there is nothing intrinsically improbable in it. Capt. Cosulich testifies that, in anticipation of the arrival and sailing of the two ships, from 3,000 to 5,000 bales of cotton had accumulated on the wharf. Mr. Richard, defendant's receiving clerk, says that, when draymen bring cotton after the hour, they go and unhitch, on the batture, and leave their drays there, and, next morning, at 7 o'clock, drive their drays up to the ship again. He also says that a driver might leave his cotton and unsigned dray receipt one day, and get the signed receipt back the next day; and we conclude from the testimony, generally, that it is by no means an uncommon thing for a drayman, who has delivered a load, to go off without carrying a receipt for it. Terence Smith (the stevedore) and Richard, however, deny that any such thing happened between them and the two draymen as testified to by the latter. After the sailing of the Federica (and, perhaps, before), plaintiff made reclamation with regard to the cotton in question, and, as indicating the attitude of Capt. Cosulich on the subject, we quote from a letter, written by him to his principal, of date January 7, 1907, a copy of which he inclosed to plaintiff, to wit:

"I beg to inform you that our friends Messrs. Mason Smith & Co. * * * made a shipment of L. W. T. (the cotton was so marked) 100 B/C to Fiume, per S. S. Federica, for which I issued B/L marked 21. Subsequently, on S. S. Margherita, voyage 20 (which preceded the Federica), I transferred L. W. T. 61 B/C of said shipment from the Federica to the Margherita. * * * However, it is claimed that L. W. T. 39 B/C were also delivered to the Margherita, notwithstanding that neither ship's officers nor any receiving clerk at the levee, have any record of receiving it. I have no doubt that said cotton was delivered, by mistake, to some other steamer in port, lading. But I wish to protect our friends, the shippers, as far as it lies in our power, and would beg you, on the arrival of the Margherita, which sailed hence on the 9th ulto, to have carefully checked the delivery of cotton at Venice and Trieste, and ascertain whether or not L. W. T. 39 bales, missing, are on board; and, if found on board, take care of same, advising me, at once, for further instructions. I do not need to suggest that this investigation and examination be made carefully and quietly, to avoid any possibility of outsiders taking advantage of the above conditions of the case."

Commenting, for a moment, upon the last paragraph in the letter thus quoted, it would

seem that there was some reason to apprehend that if 39 bales of cotton were known to be on board, not covered by any bill of lading, it might be appropriated by some "outsider" or unauthorized person. In that same connection, we note that Capt. Cosulich, having been asked, by defendant's counsel, about six bales of cotton which had come into defendant's possession and for which there appeared to be no claimant, replied:

"Well; six bales of cotton were delivered to the * * * company * * * by the I. C. in the name of Drew & Co. When we finished loading, six bales were left on the wharf. We went to Mr. Drew, and I said: 'There are six bales marked so and so, and we have one bill of lading for 100 bales of that mark.' He said: 'It is not my cotton.' I went to the I. C., and I said: 'Your road delivered six bales for the account of Drew & Co., and Drew & Co. say it is not their cotton, so it must be somebody else's cotton.' Q. Now, if that cotton had gotten on the ship, that would be the last of it? A. What? Q. If that cotton had got on the wharf (ship), no one would have heard to whom it belonged? A. It would happen the same thing on the other side, in signing for it."

The investigation continued for a while longer, and, on March 23, 1907, Capt. Cosulich wrote plaintiff that he had been advised, by a letter dated March 7th, of the completion of the discharge of the cargo of the Margherita, and that none of the missing cotton had been found on board. But (probably about that time) plaintiff received a statement from his agents at Trieste, and from the spinner at Fiume (to whom the cotton had been sold) showing that on March 6th 100 bales had been delivered at Fiume, the weights of which were those of the original 100 bales which he alleges were delivered by him to defendant, less a shortage in weights for which a reclamation was made and admitted. Thereafter, about March 28th, Philip Carroll, the clerk of plaintiff's drayman (Grant), reported that he had found the dray receipts for the lost cotton, and they were produced and inspected, and it is not disputed that they were signed by Thomas Hale, who was, at the time, employed by defendant to receive cotton on the levee and to issue such receipts. Grant, it seems, employs about 50 draymen, and they, all, turn over their receipts to Carroll, who takes them home with him and uses them in making up his accounts. During the busy season, they sometimes accumulate to the number of several hundred, and, in this instance, he says, the three receipts, each for 13 bales of cotton, were mislaid and were found only just before they were produced, when he discovered that he not only had the original receipts, but also the duplicates, which, are, ordinarily, left with the receiving clerk of the ship and constitute the basis of his reports. The receipts in question, Carroll says, are in his handwriting and represent cotton actually loaded onto the wagons. Hale says that they bear his signature, and that he never issued receipts for cotton that was not delivered, though he has no specific recollection as to the receipt of the cotton in question. No one accounts for the fact that Carroll was in possession of the duplicates, as well as the originals; but if we assume that Hale, or some one else, representing the defendant, parted with them, through inadvertence, it goes far towards explaining why the ship's papers contain no reference to the cotton called for by them. Plaintiff notified Capt. Cosulich of the discovery of the receipts, and there was some further correspondence between them, after which, on April 9th, Capt. Cosulich appears to have sent a cablegram to his company as follows:

"Referring to our letter of January 7, shippers produce receipt, insist payment. L. W. T. 39 B/C delivered Margherita. Have signed bills of lading 100 Fiume, with notation, '39 B/C to follow.' These 39 B/C must have been on board. Shippers afterwards furnished 39 B/C, same mark and destination to Federica, to fill up at original shipment. Thought it was short, make full inquiries, Trieste, Fiume, for the 39 B/C."

On April 29th Capt. Cosulich wrote to plaintiff as follows:

"Referring to past correspondence in regard to your claim, * * * I beg to inform you

that I am this day in receipt of the following letter from my company, dated Trieste 12th inst. viz.: 'L. W. T. 39 B/C, ex Federica B/L calling for Margherita.' Referring to your cablegram 9th inst., we are very glad to inform you that this lot turned out on discharging S. S. Federica (not Margherita, as you claim) at Fiume; thereby you may consider it as a settled claim."

Plaintiff was, still, unable to obtain a settlement, however, and in September, 1907, brought this suit, accompanied by a writ of attachment, and obtained judgment for the amount paid by him to replace the 39 bales of cotton which were said not to have been delivered. Defendant has appealed.

### Opinion.

. Plaintiff having produced receipts, issued by defendant's authorized agent, showing that his cotton had been delivered to it, for safe carriage, the burden of proof was on defendant to show either that the cotton had never, in fact, been received by it, and that the receipts were issued in fraud, or that, having been received, it had been safely carried to its destination and there delivered to the consignee, subject to such exceptions as may have been lawfully incorporated in its contract. This burden the defendant has fallen far short of discharging. Considering the whole testimony and the circumstances thereby disclosed, it seems not unlikely that, instead of there having been only 61 bales of cotton taken by the Margherita, that vessel carried the whole 100 bales which plaintiff originally ordered to be delivered, and which, we think, were delivered; the 39 bales receipted for by Hale, having been, probably, overlooked in his accounting, by reason of the fact that, through inadvertence, he had neglected to retain the duplicates of the receipts which he had given for them. It is quite evident that the business of handling and shipping cotton is rather loosely conducted, and, no doubt, many bales go astray. To say that no cotton can go on board of a ship (that

is taking on, perhaps, some thousands of bales, whilst other ships, lying near by, are similarly engaged) without being "tallied" is to attribute infallibility to the mates or other officers who do the tallying. Another factor of some interest in the case is that Capt. Cosulich advised his company, early in January, 1907, of the nature of plaintiff's claim; told them exactly what they were to look for, and where, and earnestly requested them to look. When, therefore, after having been notified, by cable, that plaintiff had found the receipts for his cotton, they, on April 12th, wrote that they had found the cotton, itself, it is to be presumed that they knew what they were writing about, and that they were not referring to cotton about which there was no anxiety or dispute.

Judgment affirmed.